13

```
FILED

            ᴠᴳ
  OCT - 7 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
```

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| In re | ) | Case No. 09-61112-B-7 |
|---|---|---|
| Donna Morris, | ) | DC No. TGM-1 |
| Debtor. | ) | |

## MEMORANDUM DECISION REGARDING TRUSTEE'S OBJECTION TO CLAIM OF AMENDED EXEMPTION

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Trudi G. Manfredo, Esq., of The Law Office of Trudi G. Manfredo, appeared on behalf of the chapter 7 trustee, James E. Salven (the "Trustee").

William C. Collier, Esq., of McDonald & Collier, appeared on behalf of the debtor, Donna Morris who also was present and addressed the court (the "Debtor").

The Trustee objects to the Debtor's amended homestead exemption (the "Objection"). The Debtor's residence appears to be unencumbered and the Debtor has exempted its full value, scheduled in the amount of $170,000. The Debtor contends that the full exemption is proper because she is permanently disabled and eligible for an exemption under California law up to $175,000. For the reasons set forth below, the Objection will be sustained. The Debtor's homestead exemption will be allowed in the amount of $75,000.

108

1    This memorandum decision contains the court's findings of fact and

2    conclusions of law required by Federal Rule of Civil Procedure 52(a), made

3    applicable to this contested matter by Federal Rule of Bankruptcy Procedure

4    7052.  The court has jurisdiction over this matter under 28 U.S.C. § 1334, 11

5    U.S.C. § 522,[1] and General Orders 182 and 330 of the U.S. District Court for

6    the Eastern District of California.  This is a core proceeding as defined in 28

7    U.S.C. §§ 157(b)(2)(A) & (O).

8    **Background and Findings of Fact.**

9    The Debtor filed a voluntary petition under chapter 7, without the

10   assistance of legal counsel, on November 13, 2009.  On schedule A, the Debtor

11   valued her single family residence located in Coarsegold, California, at $75,000

12   (the "Coarsegold Residence" or the "Residence").  The Debtor claimed the

13   basic homestead exemption for the Residence under California Code of Civil

14   Procedure § 704.730(a)(1) in the amount of $75,000.[2]  The Debtor's schedule I

15   states that she was unemployed and living off of the income from some rental

16   property in the amount of $2,200 per month.[3]  The schedules do not reveal the

17   receipt of any disability income.  The meeting of creditors concluded on January

18

19   ─────────────────

20   [1]Unless otherwise indicated, all bankruptcy, chapter, code section and rule
     references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules

21   of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October
     17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer

22   Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

23

24   [2]Unless otherwise indicated, all references to statutory exemption law are to the
     California Code of Civil Procedure ("Cal.CCP").

25

26   [3]The Debtor also scheduled a "rental property" in Seaside, California, which she
     valued at $134,000.  The court recently approved a sale of the Seaside property for

27   $280,000.

28                                        2

29, 2010.  The Trustee did not object to the original homestead exemption, but he did file a notice that there would be assets for distribution to unsecured creditors.

The Trustee contends that the Coarsegold Residence has a value of approximately $229,000.  After the Debtor unsuccessfully tried to convert the case to chapter 13, the Trustee filed an application to employ a real estate broker to sell the Coarsegold Residence.  The Debtor then moved unsuccessfully to dismiss the case.  On June 9, 2010, the Debtor amended her schedules to increase the value of the Coarsegold Residence to $185,000 and to increase the exemption for the Residence to $175,000 pursuant to Cal.CCP § 704.730(a)(3).  The amended schedules stated for the first time that the Debtor is disabled.

The Trustee timely objected to the amended homestead exemption.  On September 3, 2010, after the Trustee filed his Objection, the Debtor again amended her schedules to value the Coarsegold Residence at $170,000.  She amended her exemption schedule to exempt the full value of the property.

**Issues Presented.**

The Trustee's position is that the Debtor is not eligible for the homestead exemption claimed in the amended schedules, and that the Debtor qualifies only for the basic $75,000 homestead exemption claimed in original schedules.  That question turns on whether the Debtor is "disabled" within the meaning of the California exemption statute.  The Debtor contends that she has been disabled and unemployed continuously since 2000 due to a work-related injury to her back that occurred in 1996.  The Debtor asserts that she is unable to engage in "substantial gainful employment" as a result of her disability.  In support of his Objection, the Trustee filed a declaration, based on the Debtor's testimony at

3

1   the meeting of creditors, stating that the Debtor applied for and was denied

2   disability benefits by the Social Security Administration on three occasions.

3   The Trustee also contends that the homestead exemption was amended in bad

4   faith in an effort to frustrate his ability to sell the Coarsegold Residence after he

5   discovered that it had been grossly undervalued on the original schedules.

6   **Analysis and Conclusions of Law.**

7   **Applicable Law.** "Exemptions serve to protect and foster a debtor's

8   fresh start from bankruptcy." *In re Rolland*, 317 B.R. 402, 412-13 (Bankr. C.D.

9   Cal. 2004), citing *In re Hice*, 223 B.R. 155, 157 (Bankr. N.D. Ill. 1998).

10   "Under the [Bankruptcy] Code and California law, exemptions are to be

11   construed broadly and liberally in favor of the debtor." *Rolland*, 317 B.R. at

12   413, citing *In re Arrol*, 207 B.R. 662, 665 (Bankr. N.D. Cal. 1997).

13   The issue here is whether the Debtor is entitled to claim a homestead

14   exemption of $175,000 under § 704.730(a)(3)(B), or whether the homestead

15   exemption should be limited to $75,000 under § 704.730(a)(1). Section

16   704.730(a) provides three different exemption amounts depending on a debtor's

17   particular circumstances, of which only two are at issue here.

18   Section 704.730(a)(1) allows a basic homestead exemption of $75,000

19   *unless*,

20   the judgment debtor or spouse of the judgment debtor who resides in the
21   homestead is at the time of the attempted sale of the homestead a member
     of a family unit, and there is at least one member of the family unit who
     owns no interest in the homestead or whose only interest in the homestead
22   is a community property interest with the judgment debtor.

23   The Trustee does not dispute that the Debtor qualifies for a homestead

24   exemption under § 704.730(a)(1). He asks that the exemption be allowed based

25   on this section. However, § 704.730(a)(3)(B) allows a homestead exemption of

26   $175,000 (the "Disability Exemption") if,

27

28                                       4

the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead any one of the following:

*A person physically or mentally disabled who as a result of that disability is unable to engage in substantial gainful employment.* There is a rebuttable presumption affecting the burden of proof that a person receiving disability insurance benefit payments under Title II or supplemental security income payments under Title XVI of the federal Social Security Act satisfies the requirements of this paragraph as to his or her inability to engage in substantial gainful employment. (Emphasis added.)

Section 704.730(a)(3)(B) sets forth a two-part test to determine if a debtor is eligible for the Disability Exemption. A debtor must (1) have a physical or mental disability, and (2) as a result of that disability, be unable to engage in substantial gainful employment. These two conditions must exist as of the date of the bankruptcy petition. *In re Rostler*, 169 B.R. 408, 411 (Bankr. C.D. Cal. 1994), citing *In re Dore*, 124 B.R. 94, 98 (Bankr. S.D. Cal. 1991). The Trustee therefore, as the objecting party, has the initial burden of rebutting the presumption in favor of the exemption's validity; he must make a showing that the Debtor is "unable to satisfy one or more elements of California Code of Civil Procedure section 704.730(a)(3)(B)." *Rolland*, 317 B.R. at 419. Fed. R. Bankr.P. 4003(c).

Although the two elements are separately stated in the statute, logic suggests that they are mutually interdependent. The second element must exist "as a result of" the first element. However, a finding for the Debtor on the second element would tend to compel a finding for the Debtor on the first element as well. It would be almost nonsensical to find that a debtor is "unable to engage in substantial gainful employment" and also conclude that this condition is not caused by some physical or mental disability. The term "unable" as used in the Disability Exemption statute relates to the claimant's physical and mental abilities, and requires substantially more than a showing

5

1  that the claimant is merely "unemployed." *Dore*, 124 B.R. at 97 (interpreting

2  the term "unable to take care of or support himself or herself" in

3  § 704.710(b)(2)(D)).

4      Turning to the first element of § 704.730(a)(3)(B), the Trustee asserts

5  that the Debtor is not disabled. Section 704.730(a)(3)(B) does not define the

6  terms "disabled" or "disability." Mental disabilities are often harder to ascertain

7  than physical disabilities. *See Rostler,* 169 B.R. at 411 (stating "[i]n general,

8  mental disorders cannot be ascertained and verified like physical illnesses

9  because, unlike other parts of the body, the mind cannot be probed by

10 mechanical devices to obtain objective clinical manifestations of mental

11 illness.").

12     In *Rolland*, the debtor was suffering from severe depression. Mrs.

13 Rolland's doctor testified, by declaration, that she was treating Mrs. Rolland for

14 depression. The doctor diagnosed her as suffering from severe depression, and

15 opined that Mrs. Rolland was mentally disabled. In *Rostler*, the debtor suffered

16 from memory deficiency and mental confusion. Ms. Rostler's doctor diagnosed

17 her as having Eosinophilia Myalgia Syndrome ("EMS") and concluded that Ms.

18 Rostler was incapable of substantial gainful employment. Ms. Rostler also

19 testified that she had the symptoms of EMS when she filed her petition. In both

20 *Rolland* and *Rostler*, each court found that the first requirement of

21 § 704.730(a)(3)(B) was satisfied. In each case, the trustee failed to offer

22 evidence to respond to or contradict the debtor's evidence, and failed to meet

23 the burden of proof on that issue.

24     As to the second factor, the court must decide whether the Debtor is

25 unable to engage in substantial gainful employment as a result of her disability.

26 Section 704.730(a)(3)(B) does not define the term "substantial gainful

27

28                                                     6

1    employment," and California courts have provided little guidance with
2    interpreting the term.  In what appeared to be a case of first impression, the
3    *Rostler* court tried to define the term "substantial gainful employment" as used
4    in § 704.730(a)(3)(B).  The court first looked to the rebuttable presumption
5    found in § 704.730(a)(3)(B), that one is presumed to be unable to engage in
6    substantial gainful employment if he or she is receiving Social Security
7    disability benefits.  *Rostler*, 169 B.R. at 412.  To qualify for benefits under the
8    Social Security Act, one must be unable to engage in "substantial gainful
9    activity."  Because the statutory presumption refers to the Social Security Act,
10   and the operative language in the Act and the State statute are virtually
11   identical, the court looked to cases interpreting the Social Security Act to define
12   the term "substantial gainful employment."  *Id.*  Looking to the case of *Corrao*
13   *v. Shalala*, 20 F.3d 943 (9th Cir. 1994),[4] for guidance, the *Rostler* court
14   determined that to meet the second requirement of § 704.730(a)(3)(B), the
15   debtor must have been unable to "(1) perform meaningful mental or physical
16   work-related activity; (2) in a competitive or self-employed position; (3) that
17   normally results in pay or profit."  *Rostler*, 169 B.R. at 413.

18        Before embarking on this analysis, this court would interject two caveats.
19   First, there is no requirement that a debtor qualify for government benefits of
20   any kind to be "disabled" within the meaning of the Disability Exemption; there
21   is no reason that a debtor cannot prove "disability" without ever having applied
22   for Social Security benefits.

23

24        [4] The *Corrao* court held that "the definition of 'substantial gainful activity' under
25   the Act focuses on the nature of the claimant's work activities."  *Rostler*, 169 B.R. at 412.
     The *Corrao* court held that "work activity is 'substantial' if it involves significant
26   physical or mental activities[,]" and "[w]ork activity is 'gainful' if it is the kind of work
27   usually done for pay or profit, whether or not a profit is realized."  *Id.*

28                                      7

1    Second, the Disability Exemption, by its own terms, qualifies the term

2    "gainful employment" with the adjective "substantial." It is clear from the

3    statute, and the *Rostler* test, that "any employment," or even "part-time

4    employment" does not necessarily rise to the level of "substantial" or "gainful"

5    employment. Even, as here, a debtor's physical and mental ability to move

6    around and care for herself does not necessarily equate to an ability to (1) get

7    employed by an employer trying to make a profit in a competitive environment,

8    or (2) make an income from such employment that is "substantial." The *Rostler*

9    court observed that a work activity is "substantial" if it involves significant

10   physical or mental activities. 169 B.R. at 412, citing *Corrao*, 20 F.3d at 946.

11   However, the term "substantial" also modifies the term "gainful," which

12   suggests that the debtor must be physically, mentally and emotionally able to

13   work enough hours, at a high enough net wage, to overcome the inherent costs

14   of that employment, such as transportation, and materially contribute to his or

15   her support.

16   **Presumption of Validity and the Burden of Proof.** A claimed

17   exemption is "presumptively valid." *Carter v. Anderson (In re Carter)*, 182

18   F.3d 1027, 1029 n.3 (9th Cir. 1999). In *Carter*, the Ninth Circuit prescribed the

19   presumption and burden of production that govern the procedure for objecting

20   to a claim of exemption as follows:

21       Once an exemption has been claimed, it is the objecting party's burden
         (the trustee in this case) to prove that the exemption is not properly
22       claimed. *See* Fed. R. Bankr.P. 4003(c). Initially, this means that the
         objecting party has the burden of production and the burden of
23       persuasion. The objecting party must produce evidence to rebut the
         presumptively valid exemption. *In re Lester*, 141 B.R. 157, 161
24       (S.D.Ohio 1991). If the objecting party can produce evidence to rebut
         the exemption, the burden of production then shifts to the debtor to come
25       forward with unequivocal evidence to demonstrate that the exemption is
         proper. *See In re Mooneer*, 188 B.R. 25, 28 (Bankr.N.D.Ill.1995);
26       Fed.R.Evid. 301. The burden of persuasion, however, always remains
         with the objecting party. . . .

27

28                                        8

The Debtor may amend her exemption schedule at any time as a matter of course. However, the court is not required to allow the amended exemption upon a showing by the Trustee that the exemption was amended in bad faith. *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 784 (9th Cir. BAP 2000). In the Ninth Circuit, the Trustee's burden of persuasion is by a preponderance of the evidence. *Tyner v. Nicholson (In re Nicholson)*, __ B.R. __, 2010 WL 3312590 (9th Cir. BAP 2010).

Here, the evidence shows that the Debtor's injury occurred 14 years before she filed her bankruptcy petition. She apparently continued to work in some capacity for four more years before she applied to the Social Security Administration for disability benefits. The Debtor is not currently receiving any disability income and her request for disability benefits has been denied three times by the Social Security Administration. The evidence offered by the Trustee includes a copy of a letter produced by the Debtor, a letter dated November 2, 2000, from the Social Security Administration which explains why the Debtor's request for benefits was denied. The letter is particularly prejudicial to the Debtor's position. It states in pertinent part:

> We are writing about your claims for Social Security and Supplemental Security Income (SSI) disability benefits. Based on a review of your health problems you do not qualify for benefits on either claim. *This is because you are not disabled or blind under our rules.*
>
> . . .
>
> *We have determined that your condition is not severe enough to keep you from working.* We considered the medical and other information, your age, education, training, and work experience in determining how your condition affects your ability to work.
>
> . . .
>
> The medical evidence shows that you experience discomfort due to your back. However, you retain the ability to move about without assistance. You are able to attend to your own personal

9

needs and perform most of your daily activities.  There is no
indication of significant muscle weakness or nerve damage.  Back
x-ray and MRI shows no evidence of abnormalities.  (Emphasis
added.)

The Trustee also states in his declaration that the Debtor never

mentioned her disability during the meeting of creditors.  Of course, at that time

the Debtor was not claiming the Disability Exemption and the issue would not

have been particularly relevant.  He also notes that the Debtor failed to fairly

and accurately value the Coarsegold Residence and failed to disclose her

"disability" until after the Trustee began the process of trying to sell the

Coarsegold Residence, facts which suggest that the homestead exemption was

amended in bad faith.  Bad faith, in the context of amended exemptions, is

determined by the totality of the circumstances. *Rolland*, 317 B.R. at 414.

Based on this record, the court concludes that the *prima facie* presumption of

validity has been rebutted for the Disability Exemption.  The Debtor therefore

has the burden of producing some evidence to show that she is eligible for the

Disability Exemption.

**The Debtor's Evidence Does Not Support the Disability Exemption.**

There is no dispute here that the Debtor is unemployed.  She blames the

failure to timely disclose her "disability" on the "paralegal" who prepared her

bankruptcy schedules.  However, paralegals are not lawyers.  As a matter of

law, paralegal "petition preparers" are only authorized to prepare bankruptcy

documents based on information provided by the debtors.  The Debtor offers no

explanation for her failure to review and approve the schedules after they were

typed and before they were filed.  Similarly, she offers no explanation for her

failure to fairly value the Coarsegold Residence in the initial schedules until

after the Trustee began the process to sell it.  The Debtor had a duty to file

10

complete and accurate schedules, and she had an absolute duty to review and approve the content of those schedules before she signed them under penalty of perjury. The failure to do so can have significant consequences. *See Kavanagh v. Leija (In re Leija)*, 270 B.R. 497, 503 (Bankr. E.D. Cal. 2001) (debtor's execution of "blank" schedules which were subsequently filled with inaccurate information, and which he did not review, constituted a false oath and grounds to deny his discharge). The court may accept representations of fact in the Debtor's schedules as an admission of fact under Fed.R.Evid. 801(d)(2) even if she subsequently amended the schedules to change the disputed information. *Heath v. American Express (In re Heath)*, 331, B.R. 424, 431 (9th Cir. BAP 2005). Statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions. The Debtor may not adopt a cavalier attitude toward the accuracy of her schedules by arguing that they are not precise and correct. When schedules are amended, the old schedules do not become nullities. They are still fully subject to consideration by the court as an evidentiary admission. *In re Bohrer*, 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001).

With her initial opposition, the Debtor lodged copies of correspondence to and from various medical providers relating to the Debtor's medical issues. The documents were not supported by a declaration from the Debtor's physician. The Trustee objected to the admissibility of these documents because they were not authenticated, they constitute hearsay, and they lack foundation. That evidentiary objection is well taken. The court cannot consider the documents submitted by the Debtor as evidence to support a finding that she is "disabled" within the meaning of Cal.CCP § 704.130(a)(3)(B).

After oral argument on the Objection, the court granted additional time

11

for the Debtor to obtain and produce supplemental evidence to support her Disability Exemption claim.  In that application, the Debtor stated that she had not seen her doctor for more than one year and that the doctor was "unwilling to sign any declaration stating that [the Debtor] was unable to engagement [sic] in substantial employment."  The Debtor requested additional time to see another doctor.

After the extension of time, the Debtor filed a supplemental response which refers to additional documents, Exhibits A and B.  Unfortunately, the additional documents were not filed with the supplemental response.  They are not part of the evidentiary record, and cannot be considered by this court.[5]  The Debtor relies solely on the documents she has lodged, or tried to lodge, with the court to show that she is "disabled" within the meaning of Cal.CCP § 704.130(b)(3).  It is undisputed that the Debtor has been unemployed since 2000, but she has also been enjoying an income from her rental property in Seaside, California, during some or all of that time.  She offers no evidence or discussion regarding her educational background, her qualifications for employment, or her efforts to seek alternative "gainful" employment since she first applied for disability benefits in 2000.

**Conclusion.**

Based on the foregoing, the court is not persuaded that the Debtor is physically or mentally disabled such that she is unable to engage in substantial gainful employment.  Accordingly, she is not entitled to claim a homestead exemption in the amount of $175,000 under Cal.CCP § 704.730(a)(3)(B).  The

---

[5]The Trustee filed a reply to the supplemental response which suggests that Exhibits A and B were served on the Trustee.  The Trustee raised the same foundational evidentiary objection to the supplemental response.  Because those documents are not in the evidentiary record, the court need not rule on their admissibility.

Trustee's Objection will be sustained.  The Debtor's homestead exemption in the Coarsegold Residence will be allowed under Cal.CCP § 704.730(a)(1) in the amount of $75,000.

Dated: October ___7___, 2010

W. Richard Lee
United States Bankruptcy Judge

13